

FILED & JUDGMENT ENTERED
Steven T. Salata

August 12 2022

Clerk, U.S. Bankruptcy Court
Western District of North Carolina



J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| **JTR1, LLC,** ) | |
| ) | Chapter 7 |
| Debtor. ) | Case No. 20-30141 |
| ) | |
| ) | |
| **A. BURTON SHUFORD, TRUSTEE OF THE** ) | |
| **BANKRUPTCY ESTATE OF JTR1, LLC** ) | |
| **f/d/b/a JTR, LLC,** ) | |
| Plaintiff, ) | Adversary Proceeding |
| ) | No. 22-3013 |
| v. ) | |
| ) | |
| **ETAROS ACTUARIAL SERVICES, LLC;** ) | |
| **TRACI CHRISTIAN; and WITKOW BASKIN,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

**THIS MATTER** is before the court on the Defendants' Motion to Dismiss. On February 4, 2022, the Plaintiff filed a Complaint seeking to avoid and recover certain prepetition transfers from the Defendants. On April 8, 2022, Defendants Etaros Actuarial Services, LLC ("Etaros") and Traci Christian ("Christian" and collectively with Etaros, the "Etaros Defendants") filed a

motion pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking to dismiss certain causes of action for failure to state a claim upon which relief can be granted (the "Motion").[1]  For the reasons set forth below, the court grants the Motion in part and denies the Motion in part.

## BACKGROUND

The overarching facts relevant to this adversary proceeding are outlined in a previous order and need only be summarized.  See generally Shuford v. Kearns et. al. (In re JTR1, LLC), No. 20-30141, Adv. No. 22-3008, 2022 WL 3009620 (Bankr. W.D.N.C. July 28, 2022) (the "Kearns Order").

From 2012-2014, Freedom Communications, Inc. ("Freedom"), a California media and newspaper company, retained Richard Covelli and his corporation JTR1, Inc. (the "Debtor") to assist it in boosting the book value of Freedom's underfunded pension plan (the "Freedom Plan"). Covelli and the Debtor retained several other entities, including the Etaros Defendants, to aid them in providing these services.  Covelli and the Debtor were paid at least $13 million for their services. The efforts of the Debtor and Covelli ultimately failed to boost the book value of the Freedom Plan and potentially were illegal.  Under pressure from the Pension Benefit Guaranty Corporation (the "PBGC"), Freedom filed Chapter 11 case no. 8:15-bk-15311-TA in the Central District of California (the "Freedom Bankruptcy").

The unsecured creditor's committee (the "Committee") in the Freedom Bankruptcy then commenced an adversary proceeding (the "Committee Lawsuit") on January 26, 2017, against Covelli, the Debtor, and several other entities involved in the funding transactions, including the Etaros Defendants.  The Committee Lawsuit asserted three causes of action against the Etaros Defendants: 1) aiding and abetting breach of fiduciary duty; 2) avoidance of fraudulent transfers

---

[1] The Motion seeks to dismiss Counts I–IX of the Complaint as to the Etaros Defendants.

pursuant to 11 U.S.C. § 548(a)(1)(B); and 3) avoidance of specified fraudulent transfers pursuant to 11 U.S.C. § 544(b) and California Civil Code §§ 3439.04, 3439.05 and 3439.07. Thereafter, the Committee assigned their claims to the PBGC.

The parties reached a settlement of the Committee Lawsuit in January of 2020, and the California Bankruptcy Court entered an order approving this settlement (the "Settlement Order") between the parties on March 20, 2020. The Settlement Order, however, did not immediately resolve the matter because the Committee Lawsuit had previously been withdrawn to the U.S. District Court for the Central District of California (the "DCCC") and consolidated with a separate lawsuit filed by the PBGC against the same general group of defendants. The parties in the Committee Lawsuit had failed to obtain prior settlement approval from the DCCC, and as a result, the DCCC vacated the Settlement Order.

The Etaros Defendants subsequently filed an Offer of Judgment of $600,000, and the DCCC entered the Judgment on May 19, 2020. The Etaros Defendants then entered into a settlement agreement (the "Judgment Settlement") with the PBGC on June 18, 2020, which released them from all liabilities under the Judgment in exchange for a negotiated sum of $120,000. On October 22, 2020, a Notice of Satisfaction of Judgment was filed with the DCCC evidencing the Etaros Defendants' payment in satisfaction of the Judgment.

Between 2014 and 2019, after Freedom paid the Debtor, the Debtor made various cash transfers to other entities that had provided services related to the Freedom Plan transactions. Specifically, the Debtor transferred approximately $626,416 to Etaros between December 31, 2014 and December 31, 2015 (the "Etaros Transfers") and approximately $105,961.94 to Defendant Witkow Baskin ("Witkow") between August 22, 2017 and July 9, 2019 (the "Witkow Transfers" and collectively with the Etaros Transfers, the "Transfers") for a total sum of $732,377.94 to the

Defendants between December 31, 2014 and July 9, 2019. The Debtor paid Witkow in connection with its representation of the Etaros Defendants in the legal proceedings that occurred in California.

On February 6, 2020, the Debtor filed a Chapter 7 bankruptcy in this judicial district. Burt Shuford was appointed Chapter 7 Trustee (the "Trustee") for the Debtor's estate. In February 2022, the Trustee commenced an adversary proceeding against the Defendants, as well as actions against other participants in the alleged scheme. In his Complaint, the Trustee maintains that the Transfers are fraudulent conveyances that may be avoided and recovered under 11 U.S.C. §§ 544(b), 548, and 550.

The Defendants subsequently filed the Motion. The Defendants also joined in motions to dismiss filed by defendants Kearns and Mullady, which were filed in related adversary proceedings with similar sets of causes of action. See generally id. The motions to dismiss filed by Kearns and Mullady contend that the Trustee lacks standing to bring the avoidance actions pursuant to § 544(b). See id. at *3. Kearns and Mullaly also argue that a bankruptcy a trustee is not permitted to step into the shoes of the PBGC as a Section 544(b) "golden creditor" to assert the FDCPA provisions. Id. In the Motion, the Defendants further allege that the Complaint fails to satisfy the pleading requirements under Rule 12(b)(6). Finally, among other related arguments, the Defendants assert that the Committee Lawsuit and Judgment Settlement entered in the DCCC preclude the Trustee from asserting avoidance claims against the Defendants in this adversary proceeding.

The Motion, and similar motions in several like adversary proceedings, first came on for hearing on April 25, 2022. After two continuances to allow for additional briefing to address new issues identified at the hearing, the Motion came back on for a continued hearing on June 14, 2022.

4

The court announced a ruling partially resolving the Motion at the June 14 hearing, and the parties requested a continuance to confer on how to proceed given the commonality of issues between the various adversary proceedings. The Motion came back on for hearing a third time on June 22, 2022. After hearing additional arguments, the matter was taken under advisement.

## DISCUSSION

For the reasons previously outlined in the Kearns Order, the Trustee may not employ the FDCPA provisions to avoid and recover any of the Transfers. Id. at *6. As a result, Counts I–VII of the Complaint are dismissed in their entirety. The Defendants' additional arguments are addressed in turn below.

### I. The PBGC is an Appropriate Creditor Pursuant to § 544(b)

The first issue is whether the Trustee may step into the shoes of the PBGC pursuant to 11 U.S.C. § 544(b) for purposes of pursuing a claim for the benefit of a debtor's estate. In other words, the issue is whether is the PBGC is an appropriate creditor for a trustee to step into the shoes of under 11 U.S.C. § 544(b) regardless of the applicable law used to recover the targeted transfers.

In arguing that the Trustee cannot step into the shoes of the PBGC, the Defendants primarily rely on a case from the Eleventh Circuit, which holds that a bankruptcy trustee, standing in the shoes of a corporate debtor, cannot assert a claim directly under ERISA to recover from a contributing sponsor for liabilities arising from the termination of a pension plan. See Durango-Georgia Paper Co. v. H.G. Est., LLC, 739 F.3d 1263, 1272–73 (11th Cir. 2014). In that case, the debtor's previous owner was a contributing sponsor of the terminated pension plan and was potentially liable for unpaid plan benefits. Id. at 1267–68. The trustee appointed in that case commenced a cause of action under 29 U.S.C. § 1369 against the debtor's former owner for its

liability to the PBGC and the terminated plan's beneficiaries. Id. at 1268. The Eleventh Circuit concluded that the trustee could not bring this cause of action because ERISA's funding requirements were put in place for the benefit of the terminated plan's beneficiaries, not for the benefit of the bankruptcy estate's unsecured creditors. See id. at 1273.

Durango-Georgia Paper is inapposite to this case. In Durango-Georgia Paper, the trustee asserted a cause of action held by the debtor against a third party. These types of causes of action are estate property under 11 U.S.C. § 541. Conversely, the issue in this case is whether the Trustee may step into the shoes of the PBGC as a creditor under § 544(b) to avoid and recover certain targeted transfers. Avoidance actions pursuant to § 544(b) are not strictly property of the estate under § 541 of the Bankruptcy Code. They also allow a trustee to step into the shoes of an individual creditor to avoid transfers injurious to that individual creditor on behalf of the estate. See DBMP v. Those Parties Listed on Appendix a to Complaint (In re DBMP LLC), No. 20-30080, 2021 WL 3552350, at *4 (Bankr. W.D.N.C. Aug. 11, 2021. The holding in Durango-Georgia Paper makes no mention of avoidance actions under § 544(b); it only analyzes whether a trustee may bring certain estate property causes of actions. Thus, the holding is inapplicable to this case.

In Zagaroli, this court adopted the majority view that a bankruptcy trustee is permitted to step into the shoes of the federal government as a creditor, including the IRS, and utilize applicable law available to the IRS outside of bankruptcy to avoid certain targeted transfers. Mitchell v. Zagaroli (In re Zagaroli), No. 18-50508, Adv. No. 20-5000, 2020 WL 6495156, at *3 (Bankr. W.D.N.C. Nov. 3, 2020) (citing Vieira v. Gaither (In re Gaither), 595 B.R. 201, 209 (Bankr. D.S.C. 2018)). Both Gaither and Zagaroli applied the plan language of § 544(b)(1) to conclude that since the IRS held an allowed unsecured claim in the bankruptcy, the IRS is a suitable "golden creditor" into whose shoes a trustee may step. Zagaroli, 2020 WL 6495156, at *2.

6

As in Zagaroli, the issue in this case is interpreting a statute, which "begins where all such inquiries must begin: with the language of the statute itself." Gaither, 595 B.R. at 209 (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235 (1989)). Section 544(b)(1) permits the trustee to step into the shoes of any creditor holding an allowed unsecured claim. The PBGC holds an allowed unsecured claim in this case. Therefore, the PBGC is an appropriate creditor under § 544(b) generally. However, as stated in the Kearns Order, the PBGC's debt is not a debt owing *to the United States* within the meaning of the FDCPA. Kearns, 2022 WL 3009620, at *6. Therefore, neither the PBGC nor the Trustee can use the FDCPA's avoidance provisions to take advantage of its six-year reach back period. Instead, the Trustee must use other applicable law available to the PBGC if it is to avoid and recover the Transfers.

### II. The Actual Fraudulent Transfer Claims Cannot Relate to the "Scheme"

Turning to the next issue, the Defendants contend that the Complaint does not sufficiently describe the alleged fraudulent "scheme" with enough specificity, and therefore, fails to satisfy the pleading requirements of Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In this adversary proceeding, the Trustee alleges that the Transfers were both actual fraudulent transfers with the intent to hinder, delay, and defraud creditors and constructive fraudulent transfers for which the Debtor did not receive reasonably equivalent value. According to the Complaint, the Transfers are allegedly actual fraudulent transfers because the services provided to Freedom were part of "an unlawful, fraudulent, and deceptive scheme." The Complaint is not specific as to the entities harmed by the "scheme," but it references the PBGC's

7

proof of claim for details of the "scheme." That proof of claim is in the court's registry and is a public document. Moreover, the PBGC has sued the Etaros Defendants twice up to this point, and thus, the Defendants are on notice about the particulars of the alleged "scheme."

Based on the particulars of the "scheme" outlined in the PBGC's proof of claim, the Trustee likely is alleging that the PBGC is the injured creditor, especially considering that the PBGC holds approximately 99% of the claims in this bankruptcy case. Alternatively, the Trustee's Complaint may be alleging that all of the Debtor's creditors were harmed based upon the theory that the Defendants' services provided no benefit and only brought the Debtor financial trouble, and hence, the Defendants should not have been paid. Upon closer examination, this is not a plausible theory under the facts pled.[2]

Here, the Trustee does not plead facts with enough specificity to demonstrate that the Witkow Transfers caused harm to the PBGC *as a creditor of the Debtor*, as opposed to the PBGC as a creditor of Freedom. To this extent, the Trustee's actual fraudulent conveyance claims asserted in Counts VIII and IX are dismissed.

The alleged "scheme" cited in the Complaint was perpetrated against the Freedom Plan and the PBGC as a creditor in the Freedom Bankruptcy. However, in order to survive dismissal in this case, the alleged fraudulent transfers must hinder, delay, or defraud the PBGC as a creditor of the Debtor, not Freedom. As currently described, the alleged "scheme" is related to why the transfers in the Committee Lawsuit harmed the PBGC in its capacity as statutory trustee of the

---

[2] This argument is circular. If the Defendants' work did not benefit the Debtor, then arguably, the Debtor's work did not benefit Freedom, and Freedom should never have paid the Debtor. Moreover, there is likely an untenable contribution claim here. If this was in fact a fraudulent scheme, then the Defendants and the Debtor were all participants. A recent Fourth Circuit decision holds that in pari delicto applies in bankruptcy cases. See In re Infinity Bus. Grp., Inc., 628 B.R. 213, 248 (D.S.C. 2021), aff'd, 31 F.4th 294 (4th Cir. 2022) (quoting In re Derivium Capital LLC, 716 F.3d 355, 367 (4th Cir. 2013)) ("In pari delicto is 'an affirmative defense that precludes a plaintiff who participated in the same wrongdoing as the defendant from recovering damages from that wrongdoing.' "). Thus, if the Trustee is alleging that the Defendants were joint tortfeasors in the PBGC's lawsuit, and that the Debtor should recover the monies it paid them, then this would appear to be a prohibited contribution from another joint tortfeasor.

8

Freedom Plan. The Trustee cannot rely on this same "scheme" without providing more detail as to why the Transfers harmed the PBGC as a creditor of the Debtor.

Therefore, Counts VIII and IX are dismissed to the extent that they are alleged to be actual fraudulent transfers based upon the purported "scheme." While it is not apparent how from the PBGC's perspective the Debtor's transfers of its property in payment of Etaros' legal fees are prejudicial to the Debtor's estate, the Trustee will be afforded an opportunity to amend its Complaint. The remainder of the Complaint pleads enough on its face to survive a Rule 12(b)(6) motion to dismiss.[3]

### III. The Remainder of the Claims and Arguments

Lastly, the Defendants argue that the Trustee is precluded from bringing the causes of action against Etaros and Christian by the Committee's election not to pursue avoidance of these Transfers and by the Judgment Settlement. Related to this argument, the Defendants assert a number of other arguments, including that it would be inequitable under the facts and circumstances to allow the Trustee to pursue these claims.[4] These arguments are all mooted by the fact that the Etaros Transfers are all over four years old. Since the Trustee is unable to step into shoes of the PBGC and use the six-year reach back period provided under the FDCPA, these transfers are not recoverable as currently alleged in the Complaint.

The only remaining causes of action not dismissed pursuant to this order are the constructive fraudulent transfer claims asserted in Counts VIII and IX. Witkow was not a party to

---

[3] Counts I–VII are also dismissed to the extent they rely on the "scheme" as the basis for actual fraudulent transfer claims. Furthermore, to the extent that Counts I–VII assert constructive fraudulent transfer claims, those are also dismissed. Not enough facts on the face of the Complaint support that the Debtor did not receive reasonably equivalent value from the Etaros Defendants for its services. These reasons for dismissal are in addition to those previously noted in this order, which dismiss Counts I–VII in their entirety.

[4] Equitable arguments are fact intensive, and courts ordinarily do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 652 (4th Cir. 1992)). In addition to these claims being moot, it is not suitable to dismiss this case on a 12(b)(6) motion based on the equities of the case.

the Judgment Settlement, and the Defendants did not assert that the Witkow Transfers were precluded by the Committee Lawsuit. Therefore, to the extent that the Motion seeks to dismiss the remainder of the claims in Counts VIII and IX, those arguments are denied.

As to the constructive fraudulent conveyance claims asserted in Counts VIII and IX, the Trustee argues that there was a lack of "reasonably equivalent value" paid to Witkow because the Debtor paid debts it did not owe to Witkow. These constructive fraudulent conveyance claims are clearly based upon harm unique to the Debtor and its creditors. The elements of these claims, relevant factual issues, and the applicable defenses are all unique to the Debtor.[5] Therefore, these claims could not have been raised by the Freedom Committee in the Committee Lawsuit and are not precluded in this case.

## CONCLUSION

In conclusion, for the reasons stated in the Kearns Order, the Trustee may not step into the shoes of the PBGC to invoke the FDCPA to avoid and recover any of the Transfers. Accordingly, the court hereby **GRANTS** the Motion **IN PART** to the extent that the Trustee employs the FDCPA to avoid and recover the Transfers. This dismisses Counts I–VII and prevents the Trustee from taking advantage of the six-year reach back period provided by the FDCPA. Since the Etaros Transfers are more than four years before the petition date, they are not recoverable, and as a result, the arguments related to claim preclusion are mooted with respect to the Etaros Transfers.

In addition, the court **GRANTS** the Motion **IN PART** with respect to Counts VIII and IX to the extent that the alleged actual fraudulent transfer claims are based upon the "scheme," and the harm the "scheme" causes to the PBGC as a creditor of Freedom. The Trustee is **ALLOWED**

---

[5] For example, a constructive fraudulent transfer action requires determination of insolvency, or a lack of sufficient business capital to the transferor Debtor. Such a cause could not have been brought in the Committee action because Freedom and the Debtor would have different dates of insolvency.

10

**14-DAYS TO AMEND** its Complaint to plead actual fraudulent transfers that are harmful to the PBGC as a creditor of Freedom.

The court otherwise **DENIES** the Motion **IN PART**. The Trustee may step into the shoes of the PBGC and rely on applicable North Carolina law to seek to recover the remainder of the Transfers. The constructive fraudulent transfer claims alleged in Counts VIII and IX are sufficient to survive a 12(b)(6) motion to dismiss.

**SO ORDERED.**

| | |
|---|---|
| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order. | United States Bankruptcy Court |